**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                       :
CHARLES HAMMER, on behalf of            :         Civil Action No. 11-4124
herself and all others similarly situated,  :
                                                       :
           Plaintiffs                             :
                                                       :
           v.                                       :
                                                       :
                                                       :         **OPINION**
VITAL PHARMACEUTICALS, INC.        :
d/b/a VPX; ABC COs. NOS. 1-100;         :
JOHN DOEs NOS. 1-100; XYZ COs        :
NOS. 1-100; ROBERT ROEs NOS.         :
1-100, DEF COs. NOS. 1-100 and           :
JOHN SMITHs NOS 1-100                   :
(fictitious names),                            :
                                                       :
           Defendants.                         :
_____:

**WOLFSON, United States District Judge**:

This putative class action brought by Plaintiff Charles Hammer ("Hammer" or "Plaintiff")

challenges the marketing and sales practices of Liquid Clenbutrx Hardcore ("Clenbutrx"), a "dietary

supplement" manufactured by Defendant Vital Pharmaceuticals, Inc. d/b/a VPX/REDLINE

(improperly pled as Vital Pharmaceuticals, Inc. d/b/a VPX) ("VPX" or "Defendant").   In the

Complaint, Plaintiff alleges that Defendant's advertisements and packaging of Clenbutrx contained

various affirmative misrepresentations concerning the supplement that were deceptive and

misleading, that Plaintiff purchased the products pursuant to these misrepresentations, and he

suffered damages as a result thereof.   Based on these averments, Plaintiff asserts violations of the

New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. ("NJCFA") (Count I), as well as claims

1

for common law fraud (Count II), unjust enrichment (Count III), breaches of express (Count IV) and

implied warranties (Count V) and injunctive relief (Count VI).  In the instant matter, Defendant

moves to dismiss the Complaint in its entirety.  For the reasons set forth below, Defendant's motion

is granted as follows: with respect to Counts I (NJCFA) and II (Common Law Fraud), Plaintiff's

claims regarding the misrepresentation that Clenbutrx is "certified by science" and that Clenbutrx

is a "dietary supplement" are DISMISSED WITHOUT PREJUDICE.   The remaining fraud

allegations – i.e., statements regarding Clenbutrx is the world's fastest, hardest hitting fat incinerator

and authentic synergistic blend of ingredients –  are DISMISSED WITH PREJUDICE.  In addition,

Counts III (Unjust Enrichment) and VI (Injunctive Relief) are DISMISSED WITHOUT

PREJUDICE.  Lastly,  Count IV (Breach of Express Warranty) and Count V (Breach of Implied

Warranty) are DISMISSED WITHOUT PREJUDICE.

## I.  BACKGROUND

In addressing Defendant's Motion to Dismiss, this Court must accept as true the allegations

contained in the Complaint.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d

Cir.2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1301 (3d Cir.1996).  Thus, the facts recited

herein are taken from the Complaint and do not represent this Court's factual findings.

VPX manufactures, markets and sells a line of "dietary supplements" including Clenbutrx.

Compl. ¶ 14.  Since 2006[1], inter alia, internet advertisements and the product packaging represented

and warranted that Clenbutrx contains "Apple Geranium (Pelargoium odorantissomum)(leaves)

---

[1]      The Court notes that in Plaintiff's opposition brief, he points out that after being served
with the Complaint, Defendant removed "Apple Geranium (Pelargonium odorantissomum)
(leaves) standardized to 1, 3 dimethylpentylamine" from the ingredients of Clenbutrx, as well as
its marketing materials.  Pl's Opp. Br. at 3.  This fact was not disputed by Defendant.

standardized to 1,3 Dimethylpentylamine." Id. ¶ 16.  In addition, VPX advertises that Clenbutrx is "certified by science, backed by the real world, and proven to give you mind blowing energy" and that its "authentic synergistic blend of ingredients . . . leave[s] scientists wondering how amazing this stuff is."  Id. ¶ 17.  Because of these misrepresentations, Plaintiff purchased Clenbutrx for $29.99.  Id. ¶ 36.

On July 18, 2011, Plaintiff filed the instant Complaint against VPX, asserting a violation of the NJCFA, common law fraud, unjust enrichment, and breaches of express and implied warranties.  The genesis of Plaintiff's complaint is that Defendant's advertisements and packaging of the dietary supplement, Clenbutrx, contained false and misleading statements which led Plaintiff to purchase such product.[2]  Specifically, Plaintiff alleges that the various representations concerning Clenbutrx induced consumers to believe that they were purchasing a product containing "apple geranium. . . [standardized] to 1,3 Dimethylpentylamine."  Id. ¶ 18.  Contrary to this representation, Plaintiff alleges that, apple geranium, a natural substance, does not normally contain 1, 3 Dimethylpentylamine, which is a synthetic laboratory-produced chemical compound.  Id. ¶¶ 20-21.  In that regard, Plaintiff complains that he was induced into purchasing Clenbutrx, a self proclaimed dietary supplement, when the supplement actually contains a synthetic compound.  Id. ¶ 26.  As a result, Plaintiff avers that Defendant's "misrepresentation[]" that Clenbutrx "is a 'DIETARY SUPPLEMENT'" that contains Apple Geranium has "misled consumers in general and Plaintiff in particular into believing that . . .Clenbutrx . . .is a dietary supplement, and as a dietary supplement

_____

[2]     The language of the allegations in the Complaint, specifically, ¶¶ 18-22, are subject to varying interpretations.  However, in light of the nature of Plaintiff's claims, the Court will construe these allegations in the manner set forth in this Opinion.

contains <u>only</u> dietary ingredients . . . ." <u>Id</u>. ¶ 28 (emphasis added).  In addition, Plaintiff claims that VPX's representations that Clenbutrx is "certified by science, backed by the real world," and that "scientists [are] wondering how amazing this stuff is" are false because "[n]o scientist has ever 'certified' or 'backed' this product's ingredient at issue." <u>Id</u>. ¶ 57.

On or about August 9, 2011, Defendant filed the instant Motion to Dismiss, contending that: (1) Plaintiff did not plead the fraud claims with sufficient particularity; (2) the labeling of Clenbutrx as a "dietary supplement" was mandated by federal law; (3) the alleged misleading statements on Clenbutrx's website are puffery; and (4) Plaintiff did not suffer an ascertainable loss. Def's Mot. at 6-11.  In addition, Defendant contends that Plaintiff's unjust enrichment and warranty claims fail as a matter of law.

On or about September 28, 2011, Plaintiff filed opposition to Defendant's Motion to Dismiss. Defendant filed a Reply Brief on or about October 17, 2010.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends. . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a).  The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded."  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2004).

When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

4

reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the following principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal,

129 S.Ct. At 1949 (quoting Twombly, 550 U.S. at 556).  Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.  DISCUSSION

### A. NJCFA and Common Law Fraud

The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.

The term "person" as used in the NJCFA includes, inter alia, natural persons, partnerships, corporations, companies, trusts, business entities and associations.  N.J.S.A §56:8-1(d).

To state a prima facie case under the NJCFA, a plaintiff must sufficiently plead three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. Payan v. GreenPoint Mortg. Funding, Inc., 681 F.Supp.2d 564, 572 (D.N.J.2010) (citing Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 964 A.2d 741, 749 (2009)).   Unlawful practices under the

NJCFA fall into three general categories: affirmative acts, knowing omissions, and regulation violations.  Frederico v. Home Depot, 507 F.3d at 188 (3d Cir. 2007)).  Intent to defraud is not necessary to show unlawful conduct by an affirmative act of the defendant, but is an element of unlawful practice by knowing omission of the defendant.  See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350 (1997); Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008).

Moreover, it is well-established that claims under the NJCFA must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  See, e.g., Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); Arcand v. Brother Intern. Corp., 673 F.Supp.2d 282 (D.N.J. 2009).  Pursuant to that rule, a plaintiff alleging fraud must state the circumstances of the alleged fraud with particularity. Fed. R. Civ. P. 9(b).  In order to satisfy this heightened pleading standard, a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'  Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico, 507 F.3 at 200.  Indeed, the Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany " 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276–77 (3d Cir. 2006) (citations omitted) abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, L.T.D., 551 U.S. 308, 322-23, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). Moreover, a complaint sounding in fraud must do more than assert generalized facts, it must allege facts specific to the plaintiff.  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658–59

(3d Cir. 1998) <u>abrogated on other grounds by</u> <u>Rotella v. Wood</u>, 528 U.S. 549 (2000) (where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b).").

In addition, Plaintiff's common law fraud must also be pled with specificity.  To plead a fraud claim, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resultant damages." <u>Banco Popular North America v. Gandi</u>, 184 N.J. 161, 172-73 (2005).

### 1. Unlawful Conduct

Plaintiff's NJCFA claim must contain specific allegations of Defendants' unlawful conduct, subject to the heightened pleading requirements of Rule 9(b).  To constitute an affirmative misrepresentation under the NJCFA, the statement must be: (1) material to the transaction; (2) a statement of fact; (3) found to be false; (4) and calculated to induce the buyer to make the purchase. <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 607, 691 A.2d 350, 366 (1997).  "A statement of fact is material if: (a) a reasonable person would attach importance to its existence in determining a choice of action…; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." <u>Ji v. Palmer</u>, 755 A.2d 1221, 1228 (N.J. App. Div. 2000) (quoting Restatement (Second) of Torts § 538(2)).

In the Complaint, Plaintiff alleges that VPX marketed Clenbutrx as a dietary supplement, and that this advertising was misleading because the product did not contain only dietary ingredients. In addition, Plaintiff contends that the nutrition label on the product touted that the product contains

"apple geranium. . . [standardized] to 1,3 Dimethylpentylamine"; however, Plaintiff contends that contrary to the representation on the label, apple geranium, a natural dietary ingredient, contained 1,3 Dimethylpentylamine, which is a synthetic compound.  Finally, Plaintiff argues that Defendant made false and misleading representations concerning Clenbutrx including that the product was "the world's fastest hardest hitting fat inceinerator," that the product was "certified by science, backed by the real world, and proven to give you mind blowing energy," and that its "authentic synergistic blend of ingredients . . .leave[s] scientists wondering how amazing this stuff is."   In response, Defendant argues that Plaintiff cannot establish a violation of the NJCFA for three separate reasons: (1) there was no unlawful conduct by Defendant because the labeling of Clenbutrx as a "dietary supplement" was mandated by federal law; (2) the alleged misleading statements on Clenbutrx's website are puffery; and (3) Plaintiff did not suffer an ascertainable loss.

The Court will separately consider each of the alleged misrepresentations.

### i.  The Labeling of Clenbutrx as a "Dietary Supplement"

As discussed above, in the Complaint, Plaintiff alleges that Defendant's labeling of Clenbutrx as a "dietary supplement" is actionable under the NJCFA.  Specifically, Plaintiff contends that Defendant affirmatively misrepresented Clenbutrx as a "dietary supplement" because the product does not contain "only dietary ingredients."  Compl. ¶ 26.  In other words, Plaintiff appears to allege that because apple geranium contains 1,3, Dimethylpentylamine, it was improper to label Clenbutrx as a dietary supplement.  Plaintiff's allegations fall short of stating a viable claim.

Pursuant to 21 U.S.C. § 321(ff)(1), a dietary supplement is "a product (other than tobacco) intended to supplement the diet that bears or contains <u>one or more</u> of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a

9

dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in (A), (B), (C), (D), or (E)."  21 U.S.C. §321(ff)(1) (emphasis added); see GNC Franchising LLC v. Sala, No. 06-191, 2006 U.S. Dist. LEXIS 11320, at *11-13 (W.D. Pa. Mar. 20, 2006).  Significantly, a substance's intended use is relevant to deciding whether the product is a dietary supplement. See 21 U.S.C. § 321(ff)(1); see United States v. Lane Labs-USA, Inc., 324 F. Supp. 2d 547, 564 (D.N.J. 2004).

Here, responding to Plaintiff's allegations, Defendants argue that "Clenbutrx contains dietary ingredients, including other botanicals, [thus] the labeling of this product as a 'dietary supplement'" was entirely proper.  Def's Rep. Br. at 5.  At the motion to dismiss stage, the Court cannot credit Defendant's assertion regarding what types of ingredient are contained in Clenbutrx.  However, even taking the Complaint as true, Plaintiff's allegations fail to state a claim.  Plaintiff has failed to allege that there is no dietary ingredient listed on the Clenbutrx label; instead, Plaintiff alleges only that because apple geranium, a natural ingredient, contains 1,3, Dimethylpentylamine, it was improper to label Clenbutrx as a dietary supplement.  This lone allegation does not come close to state a claim under the statutory scheme of § 321(ff).  Rather, the statute specifically provides for the labeling of a product as a "dietary supplement" if the supplement contains one or more specified dietary ingredients.  See 21 U.S.C. § 321(ff)(1).   In fact, the statute does not require that every ingredient must be a dietary ingredient.  In that regard, Plaintiff does not allege that Clenbutrx does not contain other botanicals, or that there are no other dietary ingredients in Clenbutrx.  Simply stated, the mere fact that apple geranium in Clenbutrx may not be an herb or a botanical does not necessarily mean that Clenbutrx does not have other dietary ingredients that would qualify it as a dietary supplement.

Moreover, Plaintiff has failed to allege that Clenbutrx is not intended to be used as a dietary supplement.  Accordingly, the Court finds that Plaintiff's claim, as it is currently pled, concerning the labeling of Clenbutrx as a dietary supplement is not actionable under the NJCFA.  This claim is dismissed without prejudice.

### ii.  Statements Made on Clenbutrx's Website

Next, Plaintiff contends that the following separate statements on Defendant's website constitute affirmative misrepresentations: (1) Clenbutrx is "the world's fastest, hardest hitting fat incinerator"; (2) Clenbutrx is "certified by science, backed by the real world, and proven to give you mind-blowing energy"; and (3) Clenbutrx's "authentic synergistic blend of ingredients… leave[s] scientists wondering how amazing this stuff is." (Compl. ¶16.)  In response, Defendant argues that these statements are not actionable under the NJCFA because they are puffery.

"The NJCFA distinguishes between actionable misrepresentations of fact and 'puffery.'" In re Toshiba America HD DVD Marketing and Sales Practices Litigation, Civ. No. 08-939, 2009 WL 2940081, at * 9 (D.N.J. Sept. 11, 2009) (citing Rodio v. Smith, 123 N.J. 345, 352, 587 A.2d 621 (1991)) (finding that the slogan "[y]ou're in good hands with Allstate" was "nothing more than puffery" and as such was not "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the Consumer Fraud Act.") "Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." Id. at * 10 (quoting Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)); see, e.g., Hughes v. Panasonic, Civ. A. No. 10-846, 2011 WL 2976839, at * 35, 36 (D.N.J. July 21, 2011) (holding that Panasonic's statements about the televisions' "industry leading black levels and

11

contrast ratios" as well its representations about the television technology's ability to render images "the way the director intended" and producing "breathtaking" and "vivid" colors are non-actionable puffery.   Morever, "[i]t has been noted in the context of Lanham Act cases that, unlike puffery, 'false claims that explicitly or implicitly address product attributes of importance to customers and make statements that are measurable by comparative research are not puffery." Bracco Diagnostics, Inc., v. Amersham Health, Inc., 627 F. Supp. 2d 384, 464 (D.N.J. 2009) (citing Castrol Inc., v. Pennzoil Co., 987 F.2d 939, 945–46 (3d Cir. 1993)(holding that Pennzoil's claim of superior engine protection was more than mere puffery because "it is both specific and measurable by comparative research")).   The Court will consider each statement in turn.

Here, Plaintiff argues that the statements that Clenbutrx is "the world's fastest, hardest hitting fat incinerator" and that Clenbutrx contains an "authentic synergistic blend of ingredients…[that] leave[s] scientists wondering how amazing this stuff is" are actionable misrepresentations under the NJCFA. The Court does not agree.   These statements are the epitome of vague and highly subjective claims of superiority.   See, e.g, In re Toshiba, 2009 WL 2940081, at *10.   While Defendants use the buzz words "authentic" or "scientists," that is not sufficient to bring the statements out of the realm of puffery because these statements are not making a specific claim as to the product.   See Tatum v. Chrysler Group LLC, No. 10-4269, 2011 U.S. Dist. LEXIS 32362, at *14 (D.N.J. Mar. 28, 2011) ("Absent specific claims as to the braking system, Defendant's general advertising was puffery . . . ."). Indeed, neither of these statements contains a specific or detailed factual assertion upon which a reasonable consumer would rely.   See Angrisani v. Capital Access Network, Inc., 175 Fed. Appx. 554, 556 (3d Cir. 2006) ("statements that can be categorized as "puffery" or vague and "ill-defined opinions" are not assurances of fact and do not constitute misrepresentations.") (citation omitted).

12

Rather, such statements are routinely made by companies seeking to gain a competitive advantage in their respective industries, and therefore they are considered puffery.  In re Toshiba, 2009 U.S. Dist. LEXIS 82833 at *28.  As such, the Court holds that these statements do not constitute actionable misrepresentations for purposes of the NJCFA, and Plaintiff is precluded from bringing NJCFA claims based upon those statements of puffery.

On the other hand, the statement that Clenbutrx is "certified by science" is not puffery and thus could be actionable under the NJCFA.   Indeed, unlike the above statements, Defendant's use of the term "certified by science," transforms a subjective statement that might otherwise be considered puffery, i.e., that the product will "give you mind blowing energy," into something that appears "both specific and measurable."  Castrol, 987 F.2d at 946;  see, e.g., Lieberson v. Johnson & Johnson Consumer Cos., No. 10-6196, 2011 U.S. Dist. LEXIS 107596, at *24 (D.N.J. Sept. 21, 2011) (product labels touting that the products were "clinically proven to help babies sleep better" was not puffery).  Moreover, Plaintiff alleges that no scientist has ever "certified" or "backed" Clenbutrx.  Compl. ¶57.  Thus, the Court finds that the statement that Clenbutrx is "certified by science, backed by the real world, and proven to give you mind blowing energy" is an actionable misrepresentation under the NJCFA.

Thus, the Court will consider the additional prongs required to set forth a claim under the NJCFA regarding the statement that Clenbutrx is "certified by science."[3]

---

[3]      In the event Plaintiff amends the Complaint on his affirmative misrepresentation claim regarding Clenbutrx's characterization as a "dietary supplement" – which the Court has dismissed – Plaintiff must be mindful that in order to properly allege a NJCFA claim based on that representation, the allegations must conform to the Court's rulings on the remainder of the NJCFA elements.

### 2. Ascertainable Loss

Next, Defendant argues that Plaintiff has not pled an ascertainable loss sufficient to establish a cause of action under the NJCFA because he "purchased a dietary supplement manufactured in compliance with the dietary supplement guidelines. Thus, Plaintiff did not suffer a loss in receiving what he paid for."   Def's Rep. Br. at 6.   In response, Plaintiff argues that he suffered an ascertainable loss of $29.99, i.e., the price he paid for Clenbutrx.  The Court agrees that at this juncture, Plaintiff has pled an ascertainable loss.

Under the NJCFA, "[a]n ascertainable loss is a loss that is 'quantifiable or measurable'; it is not 'hypothetical or illusory.'" Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 522 (2010) (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005)).  There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim. In cases involving product misrepresentation, "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle...." Thiedemann, 872 A.2d at 792. The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless.  See Lee, 2010 N.J. LEXIS 951, at *51-52, 2010 WL 3781595. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as advertized and the merchandise as delivered. Thiedemann, 872 A.2d at 792 (stating that an expert may employ a "market conditions" approach to product value to determine ascertainable loss). Under the third theory, an "ascertainable loss" can include a nominal overcharge for which the plaintiffs have not made a "pre-suit demand for a refund." Bosland, 964 A.2d at 751.

Here, it is clear that Plaintiff is asserting an "out-of-pocket" theory of loss; specifically,

Plaintiff alleges that he "suffered an ascertainable loss of monies, including, but not necessarily limited to the purchase price of the Liquid Clenbutrx Hardcore [he] purchased[.]"  In addition, Plaintiff contends that he "would not have purchased" the product but for Defendant's misrepresentations.  Compl. ¶ 38.  The Court notes, however, that the ascertainable loss would only relate to the misrepresentations regarding Clenbutrx as a dietary supplement and the statement that Clenbutrx is "certified by science."

Accordingly, the Court finds that Plaintiff has sufficiently pled ascertainable loss.

### 3. Causation

Finally, Defendant argues that Plaintiff has not established the third prong of a NJCFA claim – i.e. a causal relationship between the alleged unlawful conduct and Plaintiff's ascertainable loss. Indeed, it is well-established that "[c]ausation under the CFA is not the equivalent of reliance." Lee, 203 N.J. at 522; see also Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372 (2007) (holding that the CFA "essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove an ascertainable loss.") "To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice."  Id.

However, in the context of advertisements, causation is particularly crucial under the Rule 9(b) heightened pleading requirements.  In that regard, Plaintiff, here, must allege how his ascertainable loss was attributable to the unlawful conduct.  In other words, Plaintiff must allege where and when he saw the advertisement which contained the alleged misrepresentation.  See, e.g., Gross v. Johnson & Johnson-Merck Consumer Pharms. Co., 303 N.J. Super. 336, 346 (App. Div. 1997) (CFA class could only include persons who "saw the challenged advertisements" and "would

not have purchased the Pepcid but for the challenged advertisements."); <u>Solo v. Bed Bath & Beyond, Co.</u>, No. 06-1908, 2007 U.S. Dist. LEXIS, at *12 (D.N.J. Apr. 26, 2007); <u>Franulovic v. The Coca-Cola Company</u>, No. 07-539, 2007 U.S. Dist. LEXIS, at *24 (D.N.J. Oct. 25, 2007) (plaintiff failed to "allege that she purchased Enviga because of a certain misleading ad, or that she purchased the prescribed amount of Enviga and did not enjoy the advertised effects. Melfi also does not allege that other consumers actually purchased the beverage because of Defendants' advertising, or that they did not get the advertised results. Instead, Melfi's claims generally state that Enviga's marketing was false and misleading, without alleging that this false advertising caused her a quantifiable loss.").

Plaintiff has fail to so plead here.  Instead, Plaintiff, in a broad-brush fashion, alleges that he purchased Clenbutrx "upon being induced, by Defendant VPX's packaging and promotional materials and Internet advertising . . . ." Compl. ¶ 26.  While Plaintiff lists various websites wherein VPX advertised Clenbutrx, Plaintiff fails to identify any specific advertisement he viewed, where he viewed it, how he was misled by these advertisements and how these advertisements caused his injuries. In other words, the Complaint fails to identify which, if any, of the promotional or marketing materials were viewed by Plaintiff, and if they were, when these materials were viewed and how they induced Plaintiff to purchase Clenbutrx.  More simply stated, Plaintiffs have failed to allege any specific facts establishing a connection between the alleged conduct of Defendants and the alleged injury claimed.  Morever, as a corollary issue, Plaintiff also fails to allege where he purchased Clenbutrx, i.e., a store, by mail, or on the internet.  This is important because according to Plaintiff's allegations, he was induced by Defendants' online advertisement into purchasing the supplement.  At the same time, Plaintiff also alleges that he was induced by the packaging of Clenbutrx, but he does not specify where he observed the packaging.  Absent any explanation of the

16

connection between Plaintiff's alleged damages and the wrongful conduct of VPX, Plaintiff's NJCFA claim also fails on this basis.

In light of the above analysis, the Court dismisses without prejudice Plaintiff's NJCFA claim regarding the alleged misrepresentation that Clenbutrx is a "dietary supplement" and the statement that Clenbutrx is "certified by science." The remaining allegations related to Plaintiff's NJCFA claim are dismissed with prejudice.

Finally, Plaintiff's common law fraud claim is dismissed without prejudice for the same reasons stated above.

### C. Plaintiff's Unjust Enrichment Claim

Under the set of facts Plaintiff has alleged, Plaintiff has not stated a claim for unjust enrichment. "To establish unjust enrichment, the plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Specifically, "the unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time if performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. Importantly, in New Jersey, a claim for unjust enrichment requires a direct relationship between the parties. See, e.g., Cooper v. Samsung Elecs. Am. Inc., No. 07-3853, 2008 U.S. Dist. LEXIS 75810, 2008 WL 4513924 (D.N.J. 2008); see also Premier Pork L.L.C. v. Westin Inc., No. 07-1661, 2008 U.S. Dist. LEXIS 20532, 2008 WL 724352, at *14 (D.N.J. 2008) ("quasi contract claims involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit . . ."); Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 109, 219 A.2d 332 (App. Div. 1966) (citing importance of either a direct relationship or a mistake in

quasi-contract).  For example, in <u>Cooper,</u> the court held that although plaintiff alleged that the manufacturer was unjustly enriched through the purchase of a television, plaintiff had not conferred a direct benefit on the manufacturer since the purchase was made through a retailer.  As a result, the court dismissed plaintiff's unjust enrichment claim.

Applied here, the Court finds that Plaintiff has not sufficiently alleged a claim for unjust enrichment.  Indeed, as in <u>Cooper</u>, Plaintiff has not alleged where he purchased Clenbutrx, i.e., whether he purchased it directly from Defendant or if he purchased the product through a retail establishment, online or otherwise.  As a result, the Court is unable to determine whether there is a direct relationship between the parties such that Plaintiff can establish that he conferred a benefit upon Defendant for purposes of an unjust enrichment claim.  Thus, the Court will dismiss Plaintiff's unjust enrichment claim without prejudice.

### D.  Warranty Claims

#### 1.      Pre-litigation Notice

Plaintiff asserts claims of breach of express warranty and breach of implied warranty of merchantability.  However, fatal to both claims is the lack of allegations involving pre-litigation notice.  New Jersey has adopted the Uniform Commercial Code's ("UCC") notice requirement for an express warranty claim.  <u>Luppino v. Mercedes-Benz USA, LLC</u>, No. 09-5582, 2011 U.S. Dist. LEXIS 65495, at *7 (D.N.J. Jun. 20, 2011); <u>Joc, Inc. v. Exxonmobil Oil Corp.</u>, No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010); <u>Slack v. Suburban Propane Partners, L.P.</u>, No. 10-2548, 2010 WL 5392845, at *4-5 (D.N.J. Dec. 22, 2010).  It provides: "Where a tender has been accepted . . . the buyer must within a reasonable time after [s]he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  N.J.S.A. 12A:2-607(3)(a).  Based

upon the language, this statutory notice is a "condition precedent to filing any suit for breach of warranty." Joc, 2010 WL 1380750 at *4.  A similar requirement is needed for a breach of implied warranty.  See C.F. Seabrook Co. v. Beck, 174 N.J. Super. 577, 593 (App. Div. 1980)("New Jersey law on sales requires notice as a prerequisite to the buyer's assertion that the seller breached an implied warranty of merchantability."(citing Johnson v. Hoffman, 7 N.J. 123, 131, 132 (1951)).

Here, Plaintiff has failed to plead that he provided the pre-litigation notice of breach.  More importantly, Plaintiff offers no excuse or explanation for his failure to do so.  Accordingly, because Plaintiff has failed to allege that the condition precedent has been met – sending a pre-litigation notice – Plaintiff's express and implied warranty claims necessarily fail.  See Luppino, 2011 U.S. Dist. LEXIS 65495 at *7 ("At no time has any court in this district or in the state of New Jersey found that a buyer is not required to provide a direct seller with pre-suit notice in an action for express breach of warranty. Thus, Stern and Casiero's admission that they have failed to provide notice to Defendant proves fatal to their breach of express warranty claims.").

However, regardless of notice, both warranty claims are also inadequately pled and thus subject to dismissal.  The Court turns to those analyses.

## 2. Breach of Express Warranty

In the Complaint, Plaintiff alleges that by labeling Clenbutrx as a "dietary supplement," Defendant expressly warranted that the product contained only dietary ingredients including "Apple Geranium. . .standardized to 1,3 Dimethylpentylamine." Compl.¶¶ 69, 71.  In its Motion to Dismiss, Defendant argues that Plaintiff  did not adequately plead his claim for breach of express warranty. Specifically, Defendant argues that Clenbutrx "conforms to all affirmations, promises or descriptions made by VPX," and that Clenbutrx "contains all of the ingredients on the product's label, which

include components, in addition to apple geranium, that qualify it as a dietary supplement." Def's Br. at 14-15.

Under New Jersey law, a breach of express warranty claim has four elements: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico, 507 F.3d at 203. Moreover, courts in this Circuit have held that an advertisement may create an express warranty. See, e.g., Cipollone v. Liggett Group, Inc., 893 F. 2d 541, 575-76 (3d Cir. 1990) rev'd in part on other grounds 505 U.S. 504, 112 S.Ct. 2608, 120 L. Ed. 2d 407 (1992) (concluding that cigarette advertisements representing that the cigarettes were safe could constitute an express warranty); Elias v. Ungar's Food Products, Inc., 252 F.R.D. 233, 252 (D.N.J. 2008) (packaging statements regarding fat and caloric content created express warranty).   For example, in Elias, plaintiff alleged that descriptions on the packages of five products about fat and caloric content did not conform with the product because the product contained substantially more calories and fat than described.   As a result, plaintiffs argued that the express warranty concerning the lower caloric and fat content had been breached.   Id. at 251.   The court agreed and held that the express warranty appeared to be breached.   Id.

In the instant matter, Plaintiff argues that by labeling Clenbutrx as a "dietary supplement," Defendant warranted that the product contained only dietary ingredients.   As discussed above, 21 U.S.C. §321(ff)(1) provides that a product may be labeled as a dietary supplement if it contains one or more dietary ingredients.   Thus, even if Defendant's labeling of Clenbutrx as a "dietary supplement" created an express warranty between the parties, because Plaintiff does not allege that the product does not contain any "dietary ingredients" as defined by 21 U.S.C. § 321 (ff)(1),Plaintiff

has not stated a claim for breach of that warranty.  Simply put, taking Plaintiff's Complaint as true, even if apple geranium is not a dietary ingredient, Plaintiff has failed to allege that there are no other dietary ingredients, or equivalent, contained in Clenbutrix.  Without those allegations, Plaintiff has not sufficiently alleged a breach of an express warranty.  Accordingly, this claim is dismissed without prejudice.

### 3.  Breach of Implied Warranty of Merchantability

In addition, Plaintiff alleges that VPX breached the implied warranty of merchantability because Clenbutrx was "not adequately packaged, labeled, sold, promoted, or fit for the ordinary purposes" as a dietary supplement.  Compl. ¶¶ 75, 78.  Specifically, Plaintiff appears to argue that Defendant "impliedly warranted that the product is composed entirely of dietary ingredients, that 1,3 dimethylpentylamine is found in apple geranium, and that therefore the product is safe."  Compl. ¶ 75.[4]

Pursuant to N.J.S.A. 12A:2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind…" N.J.S.A. 12A:2-314.  "'Merchantability' requires that a product conform to its ordinary and intended use." Hughes, 2011 WL 2976839 at * 22 (quoting Berenblat v. Apple, Inc., 2009 WL 2591366, at *2 (N.D.Cal. Aug.21, 2009)).  "In order for the implied warranty of merchantability to be breached, the

---

[4]      Plaintiff also asserts that Defendant breached an implied warranty by failing to publish its "money back" guarantee on the Clenbutrx packaging materials; the guarantee was only published on its website.  As stated above, a breach of implied warranty concerns the merchantability of the product; however, nothing in Plaintiff's allegations regarding the money back guarantee concerns the product's fitness for its ordinary purpose.  Thus, Plaintiff's allegations in this context cannot form a legal basis for a breach of implied warranty claim.  Morever, even if this were a sufficient basis, Plaintiff has not cited any authority that requires a manufacturer or seller to offer a money back guarantee as a matter of law, let alone requiring companies to advertise that guarantee in a particular way.  Accordingly, the Court will dismiss these allegations with prejudice.

product at issue must have been defective or not fit for the ordinary purpose for which it was intended." In re In re Toshiba Am. HD DVD Marketing and Sales Practices Litigation at * 16. "The implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality.'" Hughes, 2011 WL 2976839, at * 22 (quoting Berenblat at *3).  Indeed, the warranty of merchantability "'simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold.' " Ferrari v. American Honda Motor Co., Inc., 2009 WL 211702, at *3 (N.J.App.Div. Jan. 30, 2009) (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370, 161 A.2d 69 (1960) (emphasis added)).

In this instant matter, Plaintiff does not dispute that Clenbutrx is sold for the ordinary purpose as a dietary supplement.  See, e.g., Compl. ¶ 76 ("Defendant made such implied warranties knowing that the ordinary purpose for which Liquid Clenbutrx Hardcore was to be used was as a dietary supplement.").   Instead, with regard to the implied warranty claim, Plaintiff alleges, at most, that the product contains ingredients other than dietary ingredients, and therefore, the product is unsafe. However, Plaintiff has proffered nothing by way of pleadings to support its assertion that a dietary supplement is not "merchantable" if it contains components other than dietary ingredients or that Clenbutrx is somehow unsafe.  Similarly, Plaintiff has entirely failed to allege or explain why the inclusion of "apple geranium standardized to 1,3 Dimethylpentylamine" renders Clenbutrx unfit for the purpose of being a dietary supplement. Thus, the Court will dismiss Plaintiff's claim for breach of the implied warranty of merchantability without prejudice.

### E.  Plaintiff's Claim for Injunctive Relief

Finally, Plaintiff asserts a cause of action for injunctive relief, arguing that Defendant should be enjoined from continuing its marketing and sale of Clenbutrx. Compl. ¶ 87.  In response, Defendant contends that injunctive relief is not a recognized cause of action and should be dismissed.  In addition, Defendant contends that even if the Court recognized this cause of action, since VPX has changed its labeling and advertisements, this cause of action is moot.  Def's Rep. Br. at 15.

Initially, the Court notes that at least one court in this district has held that injunctive relief is not separate cause of action.  See Smajlaj, 2011 WL 1086764, at *2 ("Plaintiffs also seek injunctive relief, which they mistakenly characterize as a cause of action.").  Moreover, the Court finds that in this matter, Plaintiff's claim for injunctive relief appears to be expressly tied to his fraud claims; specifically, Plaintiff alleges that Defendant's actions "of marketing, advertising, promoting, distributing, and selling" Clenbturx "continue to deceive" the public.  Compl. ¶ 85.  Thus, Plaintiff asks this Court to enjoin Defendant from "continuing their marketing, advertisement, promotion, distribution, and sale" of Clenbutrx.  Compl. ¶ 87.  Because the Court has already dismissed Plaintiff's fraud claims, and in the apparent absence of any other cause of action connected to Plaintiff's claim for injunctive relief, the Court will dismiss Plaintiff's cause of action for injunctive relief without prejudice.  Importantly, however, in the event Plaintiff re-pleads his fraud claims, he must request an injunction as a part of the relief, not as a separate cause of action.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  Specifically, with respect to Counts I (NJCFA) and II (Common Law Fraud), Plaintiff's claims regarding the

misrepresentation that Clenbutrx is "certified by science" and that Clenbutrx is a "dietary supplement" are DISMISSED WITHOUT PREJUDICE.  The remaining fraud allegations – i.e., statements regarding Clenbutrx as the world's fastest, hardest hitting fat incinerator and authentic synergistic blend of ingredients – are DISMISSED WITH PREJUDICE.  In addition, Counts III (Unjust Enrichment) and VI (Injunctive Relief) are DISMISSED WITHOUT PREJUDICE.  Moreover, with respect to Count IV (Breach of Express Warranty) and Count V (Breach of Implied Warranty) are DISMISSED WITHOUT PREJUDICE.  An order will be entered consistent with this Opinion.

Dated: March 26, 2012                          /s/ Freda L. Wolfson
                                               Freda L. Wolfson, U.S.D.J.